UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

--------------------------------------------------------------- x

MICHAEL LAWRENCE LOMBARDO,                   :
                                             :
                           Plaintiff,        :
                                             :
              v.                             :          3:25-CV-00768 (SFR)
                                             :
HANNAH LEE GOODINE,                          :
                                             :
                           Defendant.        :
--------------------------------------------------------------- x

## MEMORANDUM & ORDER

Michael Lawrence Lombardo ("Lombardo") has filed a two count Complaint against

Hannah Lee Goodine ("Goodine"), asserting claims for defamation per se and defamation.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Goodine filed a Motion to

Dismiss for lack of subject matter jurisdiction, invoking Connecticut's anti-SLAPP statute that

seeks to protect free speech against suits such as those claiming defamation.[1] Following

Lombardo's response to the Motion to Dismiss, Goodine filed a Motion to Certify a Question

to the Connecticut Supreme Court. For the following reasons, Goodine's Motion to Dismiss

and Motion to Certify are DENIED.

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation, the distinctive elements of [which] are (1) a civil complaint (2) filed against a nongovernment individual (3) because of their communications to government bodies (4) that involves a substantive issue of some public concern. . . . The purpose of a SLAPP suit is to punish and intimidate citizens who petition state agencies and have the ultimate effect of chilling any such action." *Lafferty v. Jones*, 336 Conn. 332, 337 n.4 (2020) (internal quotation marks omitted).

## I.    BACKGROUND

### A.    Factual Background

The following facts, alleged in the Complaint, are assumed as true for purposes of the motion to dismiss. Compl., ECF No. 1.

Lombardo is an audio engineer who specializes in sound system design. Compl. ¶ 5. Within that field, he enjoyed relative commercial success, fame, and prominence. *Id.* ¶¶ 5-7. In particular, Lombardo created a podcast called *Signal to Noise* that developed a sizable following. *Id.* ¶ 7. Goodine joined that following and is an avid participant in the *Signal to Noise* community. *Id.* ¶ 8. Goodine is employed by Rational Acoustics, a developer of sound system analysis software. *Id.* ¶¶ 10, 15. Rational Acoustics held two professional audio training classes for users of its software in Connecticut. *Id.* ¶ 11. At a social gathering following one of these classes on May 10, 2023, Goodine texted Lombardo with concern over the age gap between Lombardo and his now fiancé, who at the time were thirty-five and twenty-nine years old respectively. *Id.* ¶ 12.

Goodine subsequently texted her friend, Christopher Leonard, and "convinced him that Plaintiff was using his professional reputation in the audio engineering community as a means of luring young women new to the profession into having relationships with him that they would not otherwise have had but for his promises of advancing them professionally." *Id.* ¶ 14. Shortly after Goodine and Leonard had this conversation, InfoComm 2023, one of the largest audio industry trade events in the United States, was held in Orlando, Florida from June 10-16, 2023. *Id.* ¶ 16. Rational Acoustics, Goodine's employer, had a booth on the exhibit floor and had its employees staffing that booth.

On July 12, 2023, Goodine repeated to "WITNESS 1" concerns about Lombardo's "relationships with 'younger women' such as his fiancé." *Id.* ¶ 23. Goodine also admitted to WITNESS 1 that she harbored anger towards Lombardo because he did not reciprocate her desire to begin a relationship with him. Goodine knew her false allegations could be considered defamatory. *Id.* ¶ 24. Also on July 12, 2023, Goodine repeated the same damaging and false allegations about Lombardo to "WITNESS 2," telling WITNESS 2 that "her crusade against Plaintiff's reputation was driven by a desire to punish him for not reciprocating the romantic feelings that she at least once had for him." *Id.* ¶ 25. In the fall of 2023, Goodine repeated her false claims to "WITNESS 4," another professional audio engineer and member of the *Signal to Noise* community, which resulted in Lombardo's disinvitation from a gathering of audio engineers. *Id.* ¶ 28. On December 20, 2023, WITNESS 3 reported to Lombardo, following a conversation with Goodine, "they no longer wished to continue their professional relationship or friendship with Plaintiff, repeating several of the same false claims that Defendant had been spreading, almost verbatim, including that Plaintiff's partner was somehow inappropriately young, despite her being 30 years old." *Id.* ¶ 27.

Because of the close-knit nature of the audio engineering industry, the false allegations repeated by Goodine quickly spread causing significant harm for Lombardo. *Id.* ¶ 29. The employers of Leonard and Goodine, Technology Services, Inc. and Rational Acoustics, respectively, do business with each other. *Id.* ¶ 15. From 2019 until Rational Acoustics severed its business relationship with Lombardo, he had been working on a contractual basis for Rational Acoustics as an instructor, application support specialist, educational content creator, and technical writer. *Id.* ¶ 10.

Within a few weeks of the conclusion of InfoComm on June 16, 2023, Lombardo had lost "virtually every standing engagement with every client he had, with the notable exception of Pro Sound Web, which had independently determined that he was innocent of the allegations." *Id.* ¶ 29. The loss of these clients and paid opportunities cost Lombardo tens of thousands of dollars. *Id.* ¶¶ 34-36. The stress also caused Lombardo to check himself into the Emergency Department to "attempt to mitigate the effects of prolonged stress on his physical health." *Id.* ¶ 37. After Lombardo reached out to Goodine, Goodine continued to make malicious and false statements about Lombardo to others in the sound engineering industry, despite having been informed by multiple parties that her statements were both damaging and factually inaccurate, and despite being informed by multiple parties that Lombardo's personal relationships were not her business, and with full knowledge and admission that her statements had a high likelihood of damaging Lombardo's reputation. *Id.* ¶ 38.

Count One alleges defamation per se because Goodine's comments to Leonard and Witnesses 1, 2, 3, and 4 falsely and recklessly stated or asserted that Lombardo was sexually grooming young women interested in careers as sound engineers by linking their advancement in the industry to providing sexual favors to Lombardo. *Id.* ¶ 41. Lombardo has sustained special harm as a direct and proximate cause of the publication of the false and inflammatory statements made by Goodine, including but not limited to, loss of income, irreparable reputation harm, and loss of standing both in the professional community and in the community at large. *Id.* ¶ 46. As a direct and proximate result of Goodine's defamatory statements, Lombardo has suffered, and continues to suffer, from depression, insomnia and anxiety. *Id.* ¶ 47. Count Two largely repeats the allegations of Count One to support a claim of defamation. *See id.* ¶¶ 49-56. In addition to the harms described in Count One, Count Two alleges that

4

Goodine's defamatory statements tended to harm Lombardo's reputation by lowering him in the estimation of the community and deterring third parties from associating or dealing with him. *Id.* ¶ 51.

### B.    Procedural History

Lombardo initiated this case when he filed his Complaint on May 12, 2025. Compl., ECF No. 1. On August 1, 2025, Goodine filed her Motion to Dismiss ("Def.'s Mot. to Dismiss"), ECF No. 16. On September 24, 2025, Lombardo filed his Memorandum in Opposition to Goodine's Motion to Dismiss. Mem. of L. in Supp. of Pl.'s Mot. to Dismiss ("Pl.'s Mem."), ECF No. 25. On October 17, 2025, Goodine filed her Motion for Order to Certify Question Re: Motion to Dismiss to the Supreme Court of Connecticut ("Mot. to Certify"). ECF No. 26. On November 7, 2025, Lombardo filed his Memorandum in Opposition to Goodine's Motion to Certify. Mem. of L. in Opp. of Def.'s Mot. to Certify ("Pl.'s Opp. to Certify"), ECF No. 27.

## II.    <u>LEGAL STANDARD</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (citation and internal quotation marks omitted). "It is well-settled that the 'plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.'" *Matthias v. United States*, 475 F. Supp. 3d 125, 133 (E.D.N.Y. 2020) (quoting *Aurecchione v. Schooman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Although the court "must accept as true all material factual allegations in the complaint," a court should not "draw inferences from the complaint favorable to plaintiff." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "In resolving the question

of jurisdiction, the district court can refer to evidence outside the pleadings." *Student Members of Same v. Rumsfeld*, 321 F. Supp. 2d 388, 392 (D. Conn. 2004) (quoting *Luckett*, 290 F.3d at 496-97).

"Federal courts sitting in diversity or exercising supplemental jurisdiction apply state substantive law and federal procedural law." *Pop Bar, LLC v. Fellows*, No. 12 CIV. 06647 (TPG), 2013 WL 4446227, at *6 (S.D.N.Y. Aug. 19, 2013). If, however, "a Federal Rule of Civil Procedure answers the same question as a state law, the Federal Rule governs in federal court, unless the rule at issue violates the Rules Enabling Act." *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 431 (S.D.N.Y. 2021) (citing *La Liberte v. Reid*, 966 F.3d 79, 87 (2d Cir. 2020); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010); *Hanna v. Plumer*, 380 U.S. 460, 463–64 (1965)). In other words, "[i]n the event of a conflict between a Federal Rule of Civil Procedure and a provision of state law, the Federal Rule governs unless it is inapplicable or invalid." *Carroll v. Trump*, 590 F. Supp. 3d 575, 582 (S.D.N.Y. 2022) (citations omitted).

## III.    DISCUSSION

Goodine moves to dismiss Lombardo's Complaint pursuant to Rule 12(b)(1), arguing that Connecticut General Statute § 52-196a, popularly termed Connecticut's "SLAPP" law, provides her with immunity and deprives this Court of subject matter jurisdiction. Def.'s Mot. to Dismiss 3. Lombardo responds that § 52-196a does not provide immunity and, in any event, federal courts must decide subject matter jurisdiction according to statutory requirements set out by Congress not according to a state statute. Pl.'s Mem. 10-11.

Goodine also asks this Court to certify a question to the Connecticut Supreme Court as to whether "a successful anti-SLAPP motion implicates the subject matter jurisdiction of the trial court?" Def.'s Mot. to Certify 1.

## A.      Immunity and Subject Matter Jurisdiction

Goodine argues that Conn. Gen. Stat. § 52-196a "provides immunity from suit" and so bars Lombardo litigation against her. Def.'s Mot. to Dismiss 4-6. Lombardo argues that the statutory text of § 52-196a does not explicitly grant immunity from suit and Connecticut courts have not read the statute to confer such immunity. Pl.'s Mem. 13. I agree with Lombardo.

Under § 52-196a(b), a party may file a special motion to dismiss a complaint, counterclaim, or cross claim based on that "party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern." Conn. Gen. Stat. § 52-196a(b). The statute provides that "[w]hen ruling on a special motion to dismiss, the court shall consider pleadings and supporting and opposing affidavits of the parties attesting to the facts upon which liability or a defense, as the case may be, is based." *Id.* § 52-196a(e)(2). Section 52-196a(e)(3) instructs that:

> The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim.

*Id.* § 52-196a(e)(2); *see also Black Rock Gardens, LLC v. Berry*, 312 A.3d 588, 590 (Conn. App. 2024).

Goodine asserts that she does not seek to file in this Court a "special motion to dismiss" pursuant to § 52-196a. Indeed, she acknowledges that courts in this District have held that such motions may not be pursued in federal court. *See, e.g.*, *Ning v. Zyda*, No. 3:23-CV-00395 (VAB), 2024 WL 3400519, at *3 (D. Conn. July 12, 2024); *Sementes v. LaMont*, No. 3:21-CV-453 (MPS), 2021 WL 5447125, at *2 (D. Conn. Nov. 22, 2021).[2] Instead, Goodine argues that § 52-196a provides a "substantive right to immunity," analogous to Connecticut's litigation privilege or state sovereign immunity. Def.'s Mot. to Dismiss 3-6. Goodine argues that this immunity deprives this Court of subject matter jurisdiction and thus a Rule 12(b)(1) motion is the "proper procedural instrument." *Id.* at 4. Goodine also asserts that § 52-196a calls for "limited fact-based showings," that are analogous to how courts resolve Rule 12(b)(1) motions. *Id.* at 6-7.

I do not agree that § 52-196a provides immunity to suit. Although § 52-196a certainly provides a method for defendants in state court to dispense with potentially vexatious claims against free speech early in litigation, it does not provide immunity from such claims. Rather,

---

[2] In *La Liberte v. Reid*, 966 F.3d 79 (2020), the Second Circuit held that California's anti-SLAPP statute answered the same question as Rules 12 and 56 of the Federal Rule of Civil Procedure, rendering California's special motion to strike inapplicable in this Circuit. *Id.* at 87-88. *Sementes* applied the reasoning of *La Liberte*, holding that Connecticut's anti-SLAPP statute "similarly 'answer[s] the same question' as Federal Rules of Civil Procedure 12 and 56" and thus is inapplicable in federal court. *Sementes*, 2021 WL 5447125, at *2. In particular, applying § 52-196a would change the procedure set forth in Rule 12 by "requir[ing] a plaintiff to show more than 'that success is . . . merely plausible,' which is all that Rule 12(b)(6) requires." *Sementes*, 2021 WL 5447125, at *2 (citing *La Liberte*, 966 F.3d at 87); *see also id*. at *3 ("In addition, the Connecticut statute conflicts with Rule 56, which permits summary judgment only if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'").

the statute provides that while courts will dismiss some claims early in the litigation, claims supported by probable cause will proceed to a determination on the merits. In other words, the statute does not grant immunity but rather provides a mechanism to screen out frivolous litigation early in a case.

Goodine asserts that § 52-196a is analogous to Connecticut's litigation privilege, which she asserts implicates subject matter jurisdiction. Def.'s Mot. to Dismiss 3. The litigation privilege is "an absolute immunity for defamatory statements made in the course of judicial proceedings [that] has been recognized by common-law courts for many centuries." *Simms v. Seaman*, 308 Conn. 523, 531 (2013). Notably, however, although Connecticut state courts have stated that the litigation privilege implicates state trial court subject matter jurisdiction, the privilege does not deprive this Court of federal subject matter jurisdiction. *See, e.g.*, *Chien v. Jensen*, No. 3:24-CV-01717 (KAD), 2025 WL 1135407, at *4 (D. Conn. Apr. 16, 2025) (holding that the litigation privilege does not implicate subject matter jurisdiction); *Sakon v. Johnson*, No. 3:23-CV-107 (AWT), 2024 WL 1175370, at *3 (D. Conn. Mar. 19, 2024), *aff'd*, No. 24-1991, 2026 WL 445547 (2d Cir. Feb. 17, 2026) (D. Conn. 2024) ("While the defendants argue that the litigation privilege deprives this court of subject-matter jurisdiction, [a] defense of absolute . . . immunity has nothing to do with a federal court's jurisdiction.") (internal quotation marks omitted); *see also Wang v. Delphin Rittmon*, 664 F. Supp. 3d 205, 216 (D. Conn. 2023) (stating that Connecticut's "common law does not divest federal courts of jurisdiction"). Thus, the appropriate framework for consideration of the litigation privilege

is Rule 12(b)(6)—not Rule 12(b)(1). *See Chien*, 2025 WL 1135407, at *4; *Sakon*, 2024 WL 1175370, at *3.[3]

Goodine also argues that "Connecticut's anti-SLAPP provides an immunity from suit that is akin to sovereign immunity" and is thus "a jurisdictional limitation." Def.'s Mot. to Dismiss 5. But sovereign immunity belongs to sovereign states, not individual, private defendants such as Goodine. *See Baroni v. Port Auth. of New York & New Jersey*, 161 F.4th 48, 54-6 (2d Cir. 2025).

Connecticut courts have not read § 52-196a to confer immunity from suit. As the Connecticut Appellate Court has observed, a special motion to dismiss filed pursuant to § 52-196a "is not a traditional motion to dismiss based on a jurisdictional ground" but rather "a truncated evidentiary procedure enacted by our legislature in order to achieve a legitimate policy objective, namely, to provide for a prompt remedy." *Mulvihill v. Spinnato*, 228 Conn. App. 781, 782 (2024) (internal quotation marks omitted).

Quoting selectively from *Pryor v. Brignole*, 346 Conn. 534 (2023), Goodine argues that § 52-196a "affords a defendant a substantive right to avoid litigation on the merits" and thus is a form of immunity. Def.'s Mot. to Dismiss 9. However, *Pryor* quoted from *Smith v. Supple*, 346 Conn. 928, (2023), which considered whether decisions under § 52-196a were immediately appealable. *See Smith*, 346 Conn. at 949 (stating that § 52-196a "affords a defendant a substantive right to avoid litigation on the merits, and this is undoubtedly a right that would be abrogated if not vindicated by an immediate appeal"). The court in *Smith*

---

[3] Moreover, the litigation privilege is a common law defense to defamation and other claims. In contrast, § 52-196a is a statutory provision, and thus its scope is defined by the statutory text.

10

concluded that the SLAPP benefit would be lost if the "defendants were required to litigate putative SLAPP cases to conclusion following the erroneous denial of a special motion to dismiss." *Id.* at 946. *Smith* noted:

> [T]he benefit conferred by the anti-SLAPP statute [is] analogous to other statutory and common-law rights to avoid litigation on the merits—such as double jeopardy, collateral estoppel, res judicata, and absolute or sovereign immunity—which this court has deemed to qualify as final judgments under § 52-263 and *Curcio* because they cannot be vindicated by an appeal following the conclusion of trial before the trial court.

*Id.* Thus, *Smith* did not conclude that § 52-196a conferred immunity to suit but rather considered whether decisions under the statute are immediately appealable. Following *Smith*, the Connecticut Appellate Court observed in *Mulvihill* that § 52-196a does not implicate the trial court's jurisdiction. *Mulvihill*, 228 Conn. App. at 782.

Goodine distinguishes her arguments from those asserted in prior cases in this District where courts held that defendants could not file special motions to dismiss under § 52-196a. Def.'s Mot. to Dismiss 8. According to Goodine, those decisions did not evaluate whether § 52-196a granted substantive immunity, as she urges, and those defendants did not pursue motions under Rule 12(b)(1). I agree that these decisions did not consider the immunity argument raised here.[4] However, I am not persuaded that § 52-196a provides immunity.

---

[4] In *Ning*, the Court concluded, following *Smith*, that a special motion to dismiss under § 52-196a could not be pursued in federal court. The Court observed:

> The Connecticut Supreme Court's ruling in *Smith* does not suggest a different result. Nor could it. As a preliminary matter, the court there focused on "the question of whether a trial court's denial of a special motion to dismiss can nonetheless constitute an appealable final judgment." *Smith*, 293 A.2d at 859. The court's answer of yes to that question turned on its analysis of its own precedent, *see id.* (noting that, "[i]n *State v. Curcio* . . . we explicated two situations in which a party can appeal an otherwise interlocutory order . . . ."), rather than the factors considered in determining whether a matter is procedural or substantive under *Erie*

I conclude that § 52-196a does not confer immunity and instead functions as state procedural mechanism to shorten meritless litigation. I thus need not consider whether the requirements of § 52-196a are established here—in other words, whether the complaint is based on the exercise of Goodine's free speech rights "in connection with a matter of public concern," and whether Lombardo has established probable cause to succeed on the merits. Def.'s Mot. to Dismiss 11-19.

Moreover, even if the statutory text of § 52-196a purported to grant immunity, such a statute would not operate to deprive this court of subject matter jurisdiction. *See Nevada v. Hicks*, 533 U.S. 353, 373 (2001) ("There is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction."); *Sakon*, 2024 WL 1175370, at *3 (D. Conn. 2024) (stating that "a defense of absolute . . . immunity has nothing to do with a federal court's jurisdiction"); *see also Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 553 (5th Cir. 2025) ("[S]tate-created immunities do not and cannot limit the jurisdiction of federal courts. If these state-law immunities apply at all in federal court under the *Erie* doctrine, they must be treated as non-jurisdictional, merits-based defenses.") (citation omitted). The jurisdiction of federal courts is rooted in Article III of the Constitution. The Complaint alleges that this court has subject matter jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000. Compl. ¶ 3.

---

*R. Co. v. Tompkins*, 304 U.S. 64 (1938). In any event, as noted above, to the extent that Connecticut's anti-SLAPP statute conflicts with the Federal Rules of Civil Procedure, it cannot be applied to circumvent them. *Cf. La Liberte*, 966 F.3d at 88 ("[F]ederal courts must apply Rules 12 and 56 instead of California's special motion to strike.").

*Ning*, 2024 WL 3400519, at *3.

Goodine has not challenged those assertions. Therefore, I find that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

I conclude that § 52-196a does not deprive this Court of subject matter jurisdiction over Lombardo's complaint and deny her Motion to Dismiss pursuant to Rule 12(b)(1).

Finally, Goodine states that in the alternative she may seek "to invoke the substantive immunity rights afforded by § 52-196a pursuant to FRCP 12(c)." Def.'s Mot. to Dismiss 7. As Goodine has not yet filed an Answer, consideration of a Rule 12(c) motion is premature. However, this Court's holding that § 52-196a does not afford immunity to suit would control consideration of any such motion.

### B.    Motion to Certify

In connection with her Motion to Dismiss, Goodine has moved to certify the following question to the Connecticut Supreme Court. "Does a successful anti-SLAPP motion implicate the subject matter jurisdiction of the trial court? Put it another way, is the right to avoid litigation through the anti-SLAPP statute jurisdictional in nature?" Def.'s Mot. to Certify 1. Goodine argues that Connecticut law is not clearly established about whether the anti-SLAPP statute confers a substantive right that strips courts of jurisdiction over defamation cases. *Id.* In particular, Goodine argues that "no controlling precedent from the Connecticut Supreme Court or the Connecticut Appellate Court has *squarely* addressed whether that substantive right implicates subject matter jurisdiction." *Id.* at 2. Lombardo argues that the Motion to Certify should be denied because Connecticut's anti-SLAPP law does not apply in federal court. Pl.'s Opp. to Mot. to Certify 1-2.

I deny the Motion to Certify. The Connecticut Appellate Court has stated that § 52-196a does not implicate the subject matter jurisdiction of Connecticut courts. Regardless,

however, such a holding would not mean the state statute deprives a federal court of subject matter jurisdiction.

Under Connecticut law, the Connecticut Supreme Court may accept a certified question of state law from a federal court "if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." Conn. Gen. Stat. § 51-199b(d). For its part, a district court has discretion whether to certify a question of state law to the Connecticut Supreme Court. *See Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005). "When deciding whether to certify a question to the Connecticut Supreme Court, a court should consider, among other factors, '(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation.'" *Karas v. Liberty Ins. Corp.*, 2018 WL 2002480, at *1 (D. Conn. 2018) (quoting *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007)); *see also L. Cohen & Co. v. Dun & Bradstreet*, Inc., 629 F. Supp. 1419, 1422-25 (D. Conn. 1986) (Cabranes, J.) (discussing multiple additional factors).

Goodine argues that "no controlling precedent from the Connecticut Supreme Court or the Connecticut Appellate Court has *squarely* addressed whether that substantive right implicates subject matter jurisdiction." Def.'s Mot. to Certify 2. Yet the Connecticut Appellate Court stated: "'A special motion to dismiss filed pursuant to § 52-196a . . . is not a traditional motion to dismiss based on a jurisdictional ground. It is, instead, a truncated evidentiary procedure enacted by our legislature in order to achieve a legitimate policy objective, namely, to provide for a prompt remedy.'" *Mulvihill* 228 Conn. App. at 782, *cert. denied*, 350 Conn. 926 (2024) (quoting *Elder v. Kauffman*, 204 Conn. App. 818, 824 (2021)). Indeed, the Court

14

stated further: "Special motions to dismiss . . . do not implicate the subject matter jurisdiction of the court." *Id.* at 788 n.12 (citing *Elder*, 204 Conn at 824).

Regardless, however, even if the Connecticut state courts conclude that § 52-196a provides immunity that implicates state trial court subject matter jurisdiction, such a holding would not impact a decision on the pending Motion to Dismiss. As discussed above, a state statute providing immunity does not strip a federal court of jurisdiction. Accordingly, certifying the question proposed by Goodine to the Connecticut Supreme Court would not yield her an answer that would impact my decision to deny her Motion to Dismiss. Accordingly, I deny the Motion to Certify.

## IV.    **CONCLUSION**

For the foregoing reasons, I deny Goodine's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), ECF No. 16. I also deny Goodine's Motion to Certify a Question to the Connecticut Supreme Court, ECF No. 26.

**SO ORDERED.**

New Haven, Connecticut
March 17, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge